52 CCPA

## Application of Rene DE MONTMOLLIN and Henri Riat.

### Patent Appeal No. 7323.

United States Court of Customs and Patent Appeals.

May 13, 1965.

Smith, J., dissented.

A. Ponack, Washington, D. C., for appellants.

Clarence W. Moore, Washington, D. C. (Fred W. Sherling, Washington, D. C., of counsel), for Com. of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

WORLEY, Chief Judge.

This appeal is from the decision of the Board of Appeals affirming the rejection of claims 2, 6–8, and 20 of appellants' patent application[1] for "Water Soluble Organic Dyestuffs."

The subject matter is reflected in the following claim:

"2. An organic dyestuff containing at least one and at most two azo groups, a sulfonic acid group and a nuclearly bound substituent of the formula

$$-N-CO-CH-CH_2-X$$
$$\begin{vmatrix} & & | \\ & & X \\ C_{n-1}H_{2n-1} \end{vmatrix}$$

wherein each X represents a halogen atom and n is a whole number from 1 to 2."

It appears from the specification that azo dyestuffs possessing one or more sulfonic acid groups to impart water solubility to the molecule are well known. The novelty of appellants' compounds rests in the α,β–dihalopropionyl radical attached to an aromatic nucleus of the dyestuff through a nitrogen atom. The dyeings produced on cotton and wool with appellants' dyestuffs are characterized by excellent light and wash fastness.

The references are:

| | | |
|---|---|---|
| Krzikalla et al. | 2,128,255 | August 30, 1938. |
| Dreyfus | 2,402,538 | June 25, 1946. |
| British patent | 740,533 | November 16, 1955. |

The examiner rejected the claims as being obvious, therefore unpatentable, over the British patent in view of Krzikalla et al. and Dreyfus. The British patent discloses azo dye compounds capable of dyeing both wool and cotton, which contain an α,β–dihaloethyl radical, –CHX–CH₂X, attached to an aromatic nucleus of the dyestuff through the sulfone radical, –SO₂–. Recognizing that appellants' dyestuffs differ from those taught by British in that the α,β–dihaloethyl moiety is bound to the dye nucleus by the amide (–NHCO–) group rather than the sulfone (–SO₂–) group, the examiner turned to Krzikalla et al. and Dreyfus, each of which teaches that various aliphatic groups may be attached to azo dyestuffs by either –NHCO– or –SO₂– linking groups. In view of such known interchangeability of linking groups, he regarded the claimed compounds to be obvious modifications of the compounds of British.

The board approached the problem in a somewhat different manner, saying:

" * * * The examples in the specification show the dyeing of wool and cellulose fibers. * * * The last paragraphs * * * of the specification do indicate to one skilled in the art that it is the sulfonic acid and dihalogen propionyl amino groups that are responsible for the ability of the claimed dyes to dye cellulose materials, * * * since the monoazo dyes are known to be

---

1. Serial No. 731,097, filed April 28, 1958.

generally unsuitable for the dyeing of such materials. * * *

* * * * * *

"If considered entirely on the basis of the claimed compounds being dyes for cellulose, it is not apparent to us how the secondary references suggest to one skilled in the art that the linking sulfone group of the * * * British patent can be replaced by a linking amide group and the resulting dyes still be expected to have the unusual property of being able to dye cellulose fibers.

* * *

"It is thought, however, that the obviousness of the claimed dyes as acid dyes for wool must also be considered. If the references used by the Examiner make it obvious that the claimed compounds would be useful as acid dyes, then we believe the rejection on the prior art must be sustained even though they have an additional property. * * *

* * * As suggested by the Examiner, the secondary references * * * are merely exemplary of many patents in the field of soluble azo dyes which show that aliphatic radicals may be linked to a dye nucleus by either an $-SO_2-$ group or an $-NHCO-$ group * * *. [T]o substitute the latter for the former in the * * * [British patent] to make an acid dye must be regarded as obvious * * *, further noting that it is the terminal groups that are linked by such bridges to a dye nucleus that are ordinarily regarded as significant."

In their brief and oral argument here, appellants do not dispute the obviousness of the claimed compounds when considered as acid wool dyes. Rather they contend that their invention as a whole is patentably different from the closest reference compounds; that it is "well es-

tablished that there is no basis in law for ignoring any property in resolving an issue of 'obviousness;'" and that when the entire spectrum of properties of the claimed compounds is considered and a single property is found which is unexpected or unobvious, then the issue of unobviousness must be resolved in favor of the new compounds.

Although appellants cite no decision in support of their statement that "There is no basis in law for ignoring any property in resolving an issue of 'obviousness,'" that proposition is expressed *in haec verba* in In re Papesch, 315 F.2d 381, 50 CCPA 1084. There the only indication of obviousness was such presumption as might arise from the close chemical structural relationship between the compounds claimed and the prior art. Under those circumstances, the evidence of unobvious properties was clearly preponderant, and the compounds were found patentable.

■■ We do not agree with appellant that a *single* variance in the properties of new chemical compounds will necessarily tip the balance in favor of patentability where otherwise closely related chemical compounds are involved. See In re Huellmantel, 324 F.2d 998, 51 CCPA 845. It goes without saying that all evidence of record tending to establish obviousness or unobviousness must be considered.

■ We need not *surmise* here that the present compounds have *many significant properties* as dyes in common with the prior art compounds, in addition to a close similarity in chemical structure. That fact is amply established by the record. The claimed substances, as well as those of the prior art, are water soluble materials useful as dyes. Both sets of compounds have the property of being wool dyes [2] and both result in dyeings on wool fabrics which are fast to washing

2. We note that appellants' compounds and those of British and Krzikalla are also substantive to other nitrogenous textile materials, such as silk and superpolyamides.

and fulling.[3] Under the circumstances, and weighing the available evidence, we do not regard the additional ability to dye cotton sufficient to render the subject matter as a whole unobvious. We think the reference teachings provide more than adequate reason to those of ordinary skill for making the present compounds.

The view we take of this case renders it unnecessary to consider the additional rejection under 35 U.S.C. § 112.

The decision is affirmed.

Affirmed.

SMITH, Judge (dissenting).

In reaching its result, the majority opinion fails to give proper recognition to what seems to me to be the novel and unobvious inventive concept which underlies the particular embodiment thereof in the dyestuff here in issue. That concept is the provision of a single dyestuff which will dye *either* wool *or* cellulose. There is no teaching of such a dye in anything of record *except* appellants' own disclosure. To the extent such a dyestuff possesses cellulosic dyeing properties it is clearly unobvious and this issue was decided in favor of the applicant by the board when it stated:

> "If considered entirely on the basis of the claimed compounds being dyes for cellulose, it is not apparent to us how the secondary references suggest to one skilled in the art that the linking sulfone group of the Hoechst British patent can be replaced by a linking amide group and the resulting dyes still be expected to have the unusual property of being able to dye cellulose fibers. The dyes of the secondary references are not disclosed as being fixable on cellulose fibers when treated with an alkaline substance."

In failing to give proper weight to a most significant and admittedly unobvious property of the claimed dyestuff, it seems to me the court is turning its back on what I have thought to be the salutary doctrines announced in In re Lunsford, 327 F.2d 526, 51 CCPA 1000; In re Ward, 329 F.2d 1021, 51 CCPA 1132; and In re Papesch, 315 F.2d 381, 50 CCPA 1084, that in chemical cases the issue of obviousness must be determined by a consideration of *all* of the properties of the claimed compound. I am unable to equate the holdings of these cases with the decision herein.

It seems to me that both the board and the majority predicate their opinions on findings of obviousness on a faulty appraisal of appellants' entire invention to arrive at a result which is completely dependent on a hindsight reconstruction of the prior art. This same faulty half-analysis seems to me to lie at the base of the rejection of the claims under 35 U.S.C. § 112. If we find appellants have made an unobvious invention it is because a full analysis of the invention compels it. The same type of analysis will, I think, show the error in the rejection under 35 U.S.C. § 112.

I would, therefore, reverse the decision of the board.

52 CCPA

---

3. Fulling is a process of cleansing, shrinking and thickening cloth by moisture, heat and pressure.